Cronauer and Mr. Reese's. Can you hear me? Yes, just sorry. Thank you very much. Then we can proceed Mr. Kroner. Thank you, Your Honor. May it please the court counsel. Good morning, Your Honor. Thank you for giving us this chance to engage with you virtually. I know we both appreciate it. So as you're aware, Your Honor, the briefing in this case always started with a historical perspective. And that's because as the saying goes, those who don't know history are destined to repeat it, which is why the Supreme Court in Boyd set forth in case law, the principle, abstra principis. And what that means is, as no doubt you're aware from in the briefs, you nip the shoots of arbitrary power in the bud because that's the only maxim which can ever preserve the liberties of any people. Due to this concern, Judge, the Constitution protects against the arbitrary power of a state or local government and the abuse of that power and necessitates that claimants have a remedy in federal court when free speech is abused and unabashed favoritism determines the winners and the losers for government entitlements. We have a problem procedurally up front here, Mr. Cronauer, and that is that this was not litigated as a free speech claim, retaliation claim in the district court. It was litigated as an access to the court's retaliation claim. Judge, I disagree. I know that was what the court relied on in Bridges, and we talked about that in the brief. And there is no, if you look at the paragraph 139 of the complaint, there is no claim that the court access was denied. The court relied upon that in Bridges. But when you read Bridges, Bridges has two claims, retaliation for accessing the courts. Your case, not Bridges. Your case wasn't litigated as a free speech, retaliation claim in the district court. It was litigated as a access to the court's retaliation claim. You've shifted your theory on appeal. No, I, Judge, I would disagree. And there's nowhere in the complaint that states we were Well, that's how you litigated the First Amendment retaliation claim at summary judgment. I've looked, or I'm sorry, at the dismissal motion, the 12 v. 6 motion. I looked at your response and it was purely a claim of retaliation denial of access to the courts based on your naming of the DeKalb city manager as a witness in a unrelated litigation at his prior employment. Correct, Judge. That was the allegation that because he was disclosed in this other litigation as a witness for the voicemail and the email, that was the retaliation. So by definition, we are in court, we're accessing court, the access and the disclosure in court was the retaliation. Right. I get that that was the claim as it was originally brought as it was litigated at 12 v. 6. And my point is that your emphasis on free speech retaliation shifts the theory on appeal and you can't do that. So you have to stick with what you litigated. I guess I would answer to that, Judge, assuming that's true from a 12 v. 6 motion perspective, you go through all the pleading precedent, which you're familiar with. I mean, if there is a chance to cure that, then we should be given that chance to amend, which we could easily do and I'd be willing to do. And I think that's the other problem with the district court order that our briefs address. And that would, I think, obviate the concern about what was actually pled in the First Amendment complaint. Well, did you actually, did you submit a new complaint with a different set of claims? No, Judge, because once the dismissal order was entered with prejudice, I don't have that right. I have to somehow go in, either get the district court to reconsider or I appeal and I chose to appeal. But too, Judge, under the, even if you were to find that the denial of access claim was what was litigated, even under the equal protection claim, the same facts are relevant to an equal protection claim and that's under the Ishmael case that's talked about in Swanson, Hilton, this court's case, Willowbrook. And that is if there is an illegitimate animus that in and of itself violates equal protection. So even if you want to ignore or disregard the First Amendment retaliation claim, the equal protection claim would also cure or remedy any concerns. The extent to which illegitimate animus is an element of a class of unequal protection claim in this circuit is a little uncertain because of the state of our case law on that. But what we do know is that if there's a rational basis for the city's actions, or I guess we don't have the city in the appeal anymore because the city was a defendant only on the state law claim, so all we have is Mr. Nicholas, the city manager. If there was a rational basis for what he did, which is to say make the recommendation that this TIF financing be withdrawn, then you lose. And there appears on the face of it to be ample rational basis because of the lack of financial wherewithal or experience in hotel development on your client's part. But Judge, the problem is that presumes what was being said is not defamatory. And under Czaplinski, well, we're not going to nation claim. That's a state law claim. We're here on constitutional claim. Agreed. But under the Constitution, a rational basis. So under the Miller case, if you have an objective reason that can be verified, maybe there's a rational basis. This is a subjective, alleged to be untrue, incorrect, and no way, shape, or form true. By definition, it has to be irrational from a pleading stage. Now, if we get a summary judgment and they can come up with some certain facts or something, that's a different analysis, Judge. But for purposes of 12B6, the court has to take as true the allegations that the statements were false, and that's under Grady. The Grady case talks about a public media campaign to tarnish and harass. There's case law that talks about not keeping the information contained to where it's supposed to be. I mean, going to the media, doing radio interviews, trying to tarnish an individual, can never be a rational basis, Judge. Now, the Miller case, the court cites, dealt with asbestos. And that's, if you want to take a big picture why this case is much different than Miller. The issue here is not that the project had problems. The issue was that the manager, the defendant, went after the project's principals themselves rather than the project. That's a big difference because now we're getting into subjective, untruths, Judge, that by the plaintiff. Well, the plaintiff here, your client, is the LLC. It's not you. You're the principal that we're talking about here. One of the two, correct, Judge? Right. And you're the lawyer who named Mr. Nicholas as a witness in the unrelated case before the plaintiff LLC was even formed, as I understand the chronology here. And so you have to stick to what Mr. Nicholas did to the 145 Fisk LLC. Well, because the retaliation doesn't look at when, when was the timing for retaliations, when did the... The LLC wasn't involved in the previous court action, was not seeking access to the court. It wasn't even in existence then. So there's a, at a minimum, a serious causation problem here with your retaliation argument. Judge, I would argue then that that's the issue again. That's basically what you're raising the standing issue. We should get leave to amend and we can put in the agents rather than the plaintiff LLC if that's the court's concern. Again, these are issues that can be... The agents don't have a claim because the agreement that was terminated, the agreement regarding the TIF financing was between the city and the LLC, not between the city and you and your partner. Correct, Judge, which is why the plaintiff LLC is named and why the case law is clear that LLCs can only act through their agents, through their employees, which is why... That's the point. I mean, you said you wanted leave to amend so that you could name yourself as a plaintiff along with the other principal, your partner in this failed project. That wouldn't... That would be futile, is the point, because the agreement wasn't between the city and you. It was between the city and your LLC. True, Judge, but again, the defamation, not defamation, retaliation occurred against the plaintiff because of the plaintiff's connection to the principals and under the agency case law, the retaliation case law, it's broad and includes lots of different behavior and people rather than just the individual being retaliated against. This is not a question of agency law. Agency law has to do with the extent to which a principal might be liable for the torts of its agents or the extent to which agents can act for their principals. We don't have any of those issues here. We've got a constitutional, a set of constitutional claims by an LLC that lost a development opportunity because of according to the city manager. Correct, which is alleged to be false, which needs to be taken considered true for this stage of pleading. So Judge, maybe this will help cure your qualms. So the other issue or equal protection is favoritism. And the Lake Forest case the district court cited talks about this, Kelo talks about this. A court confronted with a plausible accusation of impermissible favoritism of private parties should treat the objection as a serious one and review the record to see if it has merit. So even if you want to get... Retaliation claim should be dismissed under Kelo, under Lake Forest, the favoritism issue with Shodin, which with Pappas absolutely raises an equal protection claim that should survive at the very least through discovery. Kelo wasn't an equal protection case. Just amendment taking clause public purpose case. Kelo was, but Lake Forest was not. Lake Forest was an equal protection claim. And Kelo, I'm saying for purposes of analogy, when you're in essence giving government funds to try to rebuild blighted areas, that is similar to development at issue in Kelo. So when you look at the facts that are alleged, you've got the defendant manager comes in the first week in office, he's meeting with Shodin to do a hotel development, the same company he was meeting with years prior trying to do a private public joint venture with. And you also have alleged that as soon as he successfully released false information about the plaintiff and its principles, he then the next day had an agenda to redirect the TIF money to his friend, confident Pappas Development, which also contains an investor that had hired Mr. Nicholas to lobby local governments. I think under the Lake Forest... Mr. Cronauer, that 145 Fifth, the LLC had any experience in hotel development, have you? To be honest, Judge, I believe that we said the way it was alleged, they said we don't have experience in hotel development. I said that was false. If you're talking about me, me personally, I'm different than the principal. The other principal in this case absolutely does. Are you standing before the court claiming that you made a good faith allegation or that you are now arguing that 145 Fifth has experience in hotel development? So I'm trying to be very specific. The principals, yes. 145 Fifth, as you know, is a holding company developed for this purpose. So 145 Fifth itself was a shell company started just for this project. The principals underlining that project, yes, I'm very comfortable with representations to the court. So 145 Sixth Fifth has no experience in hotel development. This is an utterly new venture. 145 Fifth has experience through its principles, which is an extension of agency. So you and your partner are the principals and you're contending and arguing right now that you have experience in hotel development. And therefore, your LLC does. My partner does. Was that allegation an argument made in the district court? It can be. If that's the concern and the amendment needs to be made, that can be made. The way it was approached is that the statement was made and it was false. And the public statements at issue here didn't even deal with experience. It dealt with working capital, financial wherewithal, which we also allege were false. So the opposite of something being false, Judge, is obviously that it must be true. Well, just asserting that it's and plausible allegations in the complaint or any argument at 12B6 that 145 Fifth had financing and working capital to back this hotel development project, as well as hotel experience. There were no such plausible allegations made that this was a completely new venture for both Shell Corporation and you and your partner. Judge, so the allegations talk about how the defendant was able to talk to at least one banker, the banker he chose, and that banker told him that there is sufficient capital. Don't worry about it. They're credible. And despite that conversation occurring, as a matter of fact, the next day or weeks or whatever it was, the timing came out and said something totally opposite and false, despite his conversation with a banker. But you're acknowledging there was no working capital? I'm not acknowledging that. The working capital for Michelle Corporation is from the principals, which the defendant knows because he was trying to do the same thing. There is absolutely working capital. And if that's that's the issue, then we can amend and we can add to all those allegations to try to refute the false narrative being perpetuated by the defendant. All right. I see your time has expired. We'll move to Mr. Reese's. Thank you, Judge. Thank you. And may it please the court counsel. My name is Michael Reese's. I'm here on behalf of the defendant, William Nicholas. The district court properly granted the rule 12B6 motion to dismiss counts two, three, and nine of the First Amendment complaint. The district court should be affirmed. Count two was a claim for First Amendment retaliation. The crux of the claim is that Nicholas retaliated against the LLC in 2019 after its attorney member disclosed Nicholas as a witness in unrelated litigation in 2017. The district court properly dismissed count two because 145 Fisk was not a party to the earlier litigation and it was not exercising a right of court access when Nicholas was named as a witness in the earlier litigation. 145 Fisk was not even formed until late 2018 for real estate investment purposes unrelated to the litigation. It has no claim that has been denied a right of access as a result of its attorney member's representation of a different litigant in 2017. In short, the LLC itself engaged in no protected First Amendment activity. 145 Fisk's claim is based only on a denial of access to the you have to stick with the claim that you actually litigated. It has abandoned that claim, however, on appeal. Instead, for the first time on appeal, it claims that it is making actually a right, I'm sorry, a claim based on a right of free speech. This new argument is completely at Specifically, paragraph 93 starts out the First Amendment right to petition the government for the redress of grievances extends to the courts in general and is protected activity. All of the allegations in count to refer only to the prior litigation. Paragraphs 93 through 97 referred to the prior case, which did not involve 145 Fisk and the right of access to the courts. It is frankly, disingenuous for 145 Fisk to posture that it is really making a free speech claim when it never used those words anywhere in those paragraphs. This court should reject the attempt to change theories on appeal. Well, we heard something this morning about a motion to amend. Let's be very clear. 145 Fisk never filed a motion to amend, and it never made any proposed amendment of record. We never had notice of any such amendment. But even if 145 Fisk had filed such a motion before or after judgment, and it made the election to appeal, rather than to go back to the district court and make a record, the amendment would have been futile. 145 Fisk never identified any protected free speech after it was formed in 2018. It relied only on the actions taken by its attorney member on behalf of a different litigant in unrelated litigation in 2017. We heard nothing this morning on count three that relates to the denial of due process. I just very briefly want to talk about that. The district court properly held that count three did not state a claim for due process. Two reasons. One, it could not allege a protectable property interest because it had no property interest. Only that it had a contract to purchase. However, a contract to purchase, an option to purchase, is a contract right. It is not a property right in the constitutional sense. The mere opportunity to acquire property is not a protected property interest. We cited United States v. Swan in our brief specifically, and plaintiff has cited no case to the contrary. Count three did not state a claim for a plausible violation of due process regarding property in which 145 Fisk held no constitutionally protected property interest. The second reason why 145 Fisk had no protected property interest is because the preliminary development agreement was not a guarantee, but it was hedged with many conditions preceding and contingencies making its interest uncertain. After all, the agreement was only preliminary, and it was subject to a final agreement for consideration and approval at a later time, which never happened. Plaintiff could not be deprived of a property interest when it had no property interest under the preliminary development agreement. Finally, let's talk about equal protection. On count nine, Fisk failed to state a claim for a violation of equal protection. To state a claim, plaintiff had to allege facts to show that a burden was on Fisk and a rational basis is presumed. Plaintiff did not meet that burden here for two reasons. First, plaintiff did not identify any identical or directly comparable hotel redevelopment comparator for TIF funding. Although plaintiff complains of favoritism, the pleadings identify no directly comparable hotel redevelopment project that was the beneficiary of TIF funding. Actually, the complaint identifies two different hotel development projects, the Cal 2020 and a second one, University Commons. However, neither of those hotel projects ever received TIF funding. So for all of plaintiff's claims of favoritism, the fact is that of the three hotel developments, none of them got any TIF funding. Plaintiff does not allege otherwise. Second, the district court was entitled to conclude that there was a conceivable rational basis for termination of the preliminary development agreement. Judge Sykes was certainly correct when she said that there was an ample basis for termination. 145 Fisk is a shell. It had no working capital and it was dependent on TIF funding and lender financing for the project. Even if plaintiff's claim of animosity and cautiously in not committing TIF funding to any proposed hotel development project. And I want to emphasize, and maybe this is because of a global pandemic. Maybe it's because we are, but the point is that any hotel development project carries financial risks. Risks that I think are only underscored when you have a pandemic. Certainly that could not be foreseen, but remember that when we're talking about a rational basis, we're only talking about what was conceivable. And I do not think that the city's decision should be second guessed when the fact of the matter is that no hotel development project has received TIF funding and any hotel project is or carries a financial risk. If there are no questions, we would ask that the district court dismissal of counts two, three, and nine be affirmed with prejudice in their entirety. There are no further questions. Thank you for your time today. Thank you very much. Mr. Cronauer, your time had expired. You may have one minute to offer some concluding thoughts. I apologize, judge. I thought we had five minutes for rebuttal. No, you used it all. Oh, okay. Sorry. I thought coming up at 10, basically judges briefly page three of 34 page 84, seven, three, my brief before the district court arguing the dismissal motion said that um, having an element is not denial of access to the courts. Denial of access to the court is not an element of plaintiff's first amendment retaliation claim. And I cited Woodruff. Um, if that was the confusion judge, again, I think leave to amend, we can easily cure that as far as the due process claim judge, there's the alchemy case, which talks about due process arises from statutes, um, resolutions, regulations. Clearly we have that in this case with the TIF act being earmarked pursuant to an official decob resolution, which required that resolution be passed. And for, um, I think the court to again, take the defendant's statements as true, despite two year prior work history between the city and the plaintiffs, um, again, undermines any rational basis because it doesn't make common sense under Swanson that two years later, all of a sudden money has become an issue. And I think to argue now with COVID, obviously I would move to strike that judge because COVID, it can't be a valid reasons now. And there's nothing in Appreciate it. Thank you very much. It was taken under advisement and